UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ELIZABETH WOOD,

Plaintiff,

v.

C.H. ROBINSON COMPANY, INC, A MINNESOTA CORPORATION,

Defendant.

Case No.  25-cv-05641-JD

**SECOND ORDER RE REMAND**

Plaintiff Elizabeth Wood, on behalf of herself and a putative class of employees, sued defendant C.H. Robinson Company, Inc. (Robinson) in California state court on a variety of wage and hour claims under California state law.  Dkt. No. 1-11.  Robinson removed the case to this Court under the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1332(d), and suggested in a brief that traditional diversity jurisdiction, 28 U.S.C. § 1332(a), was an independent basis of removal.  *See* Dkt. No. 1; Dkt. No. 14 at 15-21.  Wood asks to remand to state court.  Dkt. No. 12.

This is a return trip for Wood and Robinson.  Robinson originally removed Wood's case to federal court in early 2025.  With the consent of all parties, the case was assigned to a magistrate judge, who remanded it for lack of federal subject matter jurisdiction under CAFA.  *See* Case No. 25-cv-00294-SK at Dkt. No. 28.  The ostensible hook for this second round of removal and remand proceedings is that Wood amended her complaint in state court to add a new claim for civil penalties under the California Labor Code Private Attorneys General Act, Cal. Lab. Code § 2698 *et seq.* (PAGA), which Robinson treated as an opportunity for a fresh try at removal. Consent to magistrate judge jurisdiction was withheld this time, and so the case could not be assigned to the judge who originally handled it and ordered a remand.  These circumstances

caused the Court to question whether judge shopping and gamesmanship were driving Robinson's second removal attempt. *See* Dkt. No. 28. Although the Court need not answer these questions here, the concerns linger.

Robinson did not demonstrate subject matter jurisdiction under CAFA or traditional diversity, and the case is remanded to the Contra Costa Superior Court. Wood has now waited for a long time just to settle the forum for her claims. It is high time for this case to proceed to the merits.

## BACKGROUND

The parties' familiarity with the record is assumed. In pertinent summary, Wood filed the original class action complaint in the Contra Costa Superior Court on November 27, 2024. Dkt. No. 1-4 at 19. Robinson removed the case for the first time on January 8, 2025 and consented to the jurisdiction of Magistrate Judge Sallie Kim. *See* Case No. 25-cv-00294-SK at Dkt. Nos. 1, 10. On Wood's motion, Judge Kim remanded the case to state court, finding that defendant had not shown the amount in controversy exceeded the $5 million jurisdictional threshold for removal under CAFA. *See* Case No. 25-cv-00294-SK, Dkt No. 28 at 8. Among other conclusions, Judge Kim determined that Robinson had not proffered evidence to establish that "class members worked qualifying shifts" that would support a meal or rest period violation. *Id.* at 6-7. Judge Kim advised that "[i]f Defendant later discovers evidence demonstrating that the jurisdictional bar is met, it may once again attempt to remove this case to federal court." *Id.* at 9 (citations omitted).

In June 2025, after the remand, Wood amended the state court complaint to add a PAGA claim. Dkt. No. 1-11. Robinson used this as an opportunity to remove the case again under CAFA. *See* Dkt. No. 1. This time, it declined to consent to full assignment to Judge Kim. Dkt. Nos. 18, 20. The Court directed Robinson's counsel to file "a declaration stating in detail why a second removal was warranted by new evidence that was not available in the prior remand proceedings." Dkt. No. 28. The declaration was filed, Dkt. No. 29, and the Court now resolves the question of remand.

United States District Court
Northern District of California

**DISCUSSION**

## I.    LEGAL STANDARDS

Robinson did not allege traditional diversity as a basis of subject matter jurisdiction in its second removal notice.  It alleged removal solely under CAFA.  *See* Dkt. No. 1.  Robinson first mentioned traditional diversity as a basis of removal in an opposition brief to the motion to remand.  *See* Dkt. No. 14 at 8.  Although it might seem unfair to allow Robinson to present a Plan B at this late stage of the removal discussion, our circuit has indicated that the door should not necessarily be closed because Robinson was slow to propose another theory.  *See Williams v. Costco Wholesale Corp.*, the Court considers it in full here. 471 F.3d 975, 977 (9th Cir. 2006) ("Once a case has been properly removed, the district court has jurisdiction over it on all grounds apparent from the complaint, not just those cited in the removal notice.").  Consequently, in the circumstances presented here, the Court will evaluate removal in light of traditional diversity jurisdiction.

Removal of civil actions from state to federal court is permissible under traditional diversity jurisdiction.  28 U.S.C. § 1441.  "Diversity jurisdiction arises when a plaintiff sues a citizen of a different state over an amount in controversy exceeding $75,000." *Dole v. Verisk Analytics, Inc.*, No. 22-cv-06625-JD, 2023 WL 2985116, at *1 (N.D. Cal. Apr. 17, 2023) (citing 28 U.S.C. § 1332(a)).  "An out-of-state defendant may remove to federal court 'any civil action brought in a State court of which the district courts of the United States have original jurisdiction.'" *Id.* (quoting 28 U.S.C. § 1441(a)).  "A plaintiff may move to remand the action to state court if the case was improperly removed because of a lack of subject-matter jurisdiction." *Id.* (citing 28 U.S.C. § 1447(c)).  There is a "strong presumption against removal jurisdiction," *Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1057 (9th Cir. 2018) (internal quotation and citation omitted), and any doubt about removal weighs in favor of remand, *see Hawaii ex rel. Louie v. HSBC Bank Nev., N.A.*, 761 F.3d 1027, 1034 (9th Cir. 2014).  "Principles of federalism, comity, and respect for the state courts also counsel strongly in favor of scrupulously confining removal jurisdiction to the precise limits that Congress has defined." *California v. AbbVie Inc.*, 390 F.

United States District Court
Northern District of California

Supp. 3d 1176, 1180 (N.D. Cal. 2019) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941)).

When a case is removed under CAFA, "no antiremoval presumption" applies. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014); *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920, 924 (9th Cir. 2019) ("Congress intended CAFA to be interpreted expansively" in favor of removal of certain class actions) (internal citation omitted).

A defendant's notice of removal "need include only 'a plausible allegation that the amount in controversy exceeds the jurisdictional threshold,'" and does not need evidentiary submissions. *Sharpe v. Puritan's Pride, Inc.*, Case No. 16-cv-06717-JD, 2017 WL 475662 at *2 (N.D. Cal. Feb. 6, 2017) (quoting *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (internal citation omitted)).

When the amount in controversy estimated in the removal notice is challenged in a remand motion, the defendant's responsive burden depends on whether the plaintiff's attack is facial or factual. *Salter v. Quality Carriers, Inc.,* 974 F.3d 959, 964 (9th Cir. 2020). An attack is facial when the plaintiff accepts the defendant's allegations but says they are not enough to invoke federal jurisdiction. *Id*. In effect, a facial attack challenges "the form, not the substance" of the defendant's removal allegations, and the defendant need not respond to the remand motion with "competent proof" under a summary judgement-type standard. *Harris v. KM Indus., Inc.*, 980 F.3d 694, 700 (9th Cir. 2020).

An attack is factual when the plaintiff "contests the truth of the [defendant's] factual allegations, usually by introducing evidence outside the pleadings." *Salter*, 974 F.3d at 964. To counter a factual attack, the defendant bears the burden of establishing by a preponderance of the evidence that the amount in controversy exceeds $5 million. *Harris*, 980 F.3d at 699. The plaintiff may also submit evidence, but is not required to proffer "an alternative [assumption] grounded in real evidence." *Id*. at 700 (quoting *Ibarra*, 775 F.3d at 1199) (bracket in original); *see also Chin v. Cole Haan, LLC*, Case No. 16-cv-02154-JD, 2016 WL 7211841, at *1 (N.D. Cal. Dec. 13, 2016). The plaintiff may rely instead on "a reasoned argument as to why any assumptions on which [defendant's numbers] are based are not supported by evidence." *Harris*,

4

980 F.3d at 700. Wood makes a factual attack on C.H. Robinson's estimates of the amount in controversy by contesting its evidence and reasoning, but without introducing extrinsic evidence of her own.

"The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). "To meet CAFA's amount-in-controversy requirement, a defendant needs to plausibly show that it is reasonably possible that the potential liability exceeds $5 million." *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 772 (9th Cir. 2020). The defendant carries its burden of establishing the amount in controversy by presenting evidence that "plausibly" explains "how the stakes exceed $5 million." *Lewis*, 627 F.3d at 400-01. The defendant "need not make the plaintiff's case for it," or prove the amount in controversy to a certainty. *Harris*, 980 F.3d at 701; *see also Lewis*, 627 F.3d at 401. The Court also need not perform detailed mathematical calculations to determine whether the defendant has established the jurisdictional amount. *Harris*, 980 F.3d at 701. Rather, "a defendant may rely on reasonable assumptions to prove that it has met the statutory threshold," *id.*, and on a "chain of reasoning that includes assumptions" based on reasonable grounds, *Ibarra*, 775 F.3d at 1199. Reasonable grounds include the allegations in the complaint, as well as extrinsic evidence proffered by the defendant. *Arias*, 936 F.3d at 925. "[P]rospective attorneys' fees must be included in the assessment of the amount in controversy." *Id*. at 922.

## II.    SUCCESSIVE REMOVAL IS NOT BARRED

To start the remand argument, Wood says that the second removal is based on allegations made in plaintiff's original complaint, and so is barred by the prohibition against successive removals. Dkt. No. 12 at 4-6; *Seedman v. U.S. Dist. Ct. for Cent. Dist. of California*, 837 F.2d 413, 414 (9th Cir. 1988). A successive removal petition is permitted only when there is a "relevant change of circumstances," namely, "when subsequent pleadings or events reveal a new and different ground for removal." *Reyes v. Dollar Tree Stores, Inc.,* 781 F.3d 1185, 1188 (9th Cir. 2015) (quotations omitted).

United States District Court
Northern District of California

It is true, as Wood suggests, that the PAGA claim was predicated on substantially the same facts previously alleged for the California Labor Code violations.  But it is also true that the PAGA claim put into controversy new civil penalties that were previously not alleged for Wood's individual and class claims, thereby creating "a new and different ground for removal" that the Ninth Circuit has recognized as permitting a second removal petition.  *See Reyes,* 781 F.3d at 1188; *see also Perez v. Alta-Dena Certified Dairy, LLC,* 647 F. App'x 682, 684 (9th Cir. 2016) (unpublished) (permitting successive notice of removal after amended complaint alleged additional years of violations and changed the scope of a theory of violation).  Consequently, a successive removal notice was permissible.

III.    **ROBINSON DID NOT ESTABLISH $5M IN CONTROVERSY FOR CAFA**

To demonstrate that the CAFA requirement of at least $5 million in controversy is satisfied, Robinson focuses on five of the eight claims in the amended complaint, in addition to attorneys' fees: (1) class members did not receive their statutorily guaranteed meal period under Labor Code Section 226.7 (the meal period claim); (2) class members did not receive their statutorily guaranteed rest period under Labor Code Section 226.7 (the rest period claim); (3) class members did not receive properly calculated wage statements under Labor Code Section 226(a) (the wage statement claim); (4) class members may recover civil penalties for their inaccurate wage statements (the wage statement PAGA penalties claim); and (5) class members did not receive reimbursements for necessary business expenditures (the reimbursement claim).  *See* Dkt. 1 at 7-18; Dkt. 1-11 at 12-19.

Overall, Robinson did not reasonably establish that these claims plus fees add up to enough to cross the CAFA threshold.  To set the table for the explanation of where and why Robinson came up short, this chart summarizes Robinson's estimates and the Court's determinations.

| Claim | Defendant's Claimed Amount in Controversy | Court's Determination of Amount in Controversy |
|---|---|---|
| Meal Period Claim | $1,646,048 | $1,646,048 |
| Rest Period Claim | $1,691,666 | $1,691,666 |

6

United States District Court
Northern District of California

| Wage Statement Claim | $914,700 | $914,700 |
| Wage Statement PAGA Claim | $9,066,500 | $0 |
| Reimbursement Claim | $338,240 | $0 |
| Attorneys' Fees | $3,414,288 | $228,675 |
| **Total** | **$17,071,443** | **$4,481,089** |

### A.      The Meal Period Claim

Robinson's estimate of approximately $1.65M in controversy for this claim is plausible. The estimate is based on the assumption of a 20% violation rate, a posited average base hourly rate of $27.30, and a total of 301,474 qualifying shifts worked in the class period.  Dkt. No. 1 at 10. Wood accepts the base hourly rate and offers only minor quibbles about the number of qualifying shifts.  Her primary challenge is to the 20% violation rate.  *See* Dkt. No. 12 at 7-8.  But Wood did not show that this assumption is unreasonable, and it certainly falls well short of the 100% violation rate implausibly posited in other CAFA removal cases.  *See, e.g., Duran v. Allegis Glob. Sols., Inc.*, No. 20-CV-09025-JD, 2021 WL 3281073, at *4 (N.D. Cal. Aug. 2, 2021).  A 20% assumption is akin to violation rates the Court has accepted in other cases for similar meal period violation allegations.  *See, e.g., Shasta Collins v. Hilton Management LLC*, No. 21-CV-02523-JD, 2021 WL 2981977, at *2 (N.D. Cal. July 15, 2021).

For the number of qualifying shifts, Woods says Robinson did not account for the possibility that "an employee who works more than six hours a day may voluntarily waive the meal period by mutual consent," and so that the number of eligible shifts may be lower than 301,474.  Dkt. No. 12 at 14.  But this misapprehends the Court's inquiry at this stage.  At remand, the Court conducts a "simple and mechanical" jurisdictional inquiry, without delving into "merits-based arguments."  *Greene*, 965 F.3d at 774.  Consequently, the Court does not consider at this stage whether defendant may later prove that some percentage of qualifying shifts voluntarily waived their meal period.  Instead, based solely on the pleadings, "if the class succeeds in receiving what [Wood] asked for," the number of qualifying shifts will be 301,474 for present purposes.  *Id.*

### B.    The Rest Period Claim

The same analysis goes for the rest period claim.  This time, the number of qualifying shifts is 309,829, with the same $27.30 hourly rate and same assumption of a 20% violation rate. Dkt. No. 1 at 12.  An estimate of approximately $1.69M in controversy here is plausible.

### C.    The Wage Statement Claim

Robinson estimates $915K in controversy for the wage statement claim, which is based on the assumptions that 322 putative class members received 9,308 wage statements, and that 100% of those wage statements were incorrect. Dkt. 1 at 13.  The assumed 100% violation rate is plausible here.  That is because the wage statement claims are derivative of the meal and rest period claims, which means that a pay period with a meal or rest period violation would necessarily have a wage statement violation, and that a typical pay period would have at least one meal or rest period violation.  Other courts in this District have reached the same conclusion in similar circumstances.  *See, e.g., Radford v. Nexstar Broad., Inc.*, No. 24-CV-08118-RFL, 2025 WL 829601, at *4 (N.D. Cal. Mar. 14, 2025).

### D.    The Wage Statement PAGA Penalties

The PAGA penalties for the wage statement claim cannot be included to meet the amount in controversy under CAFA, as Robinson urges.  It is certainly true that CAFA permits the aggregation of class claims to establish the $5 million threshold.  *See* 28 U.S.C. § 1332(d)(2); *Yocupicio v. PAE Grp.*, LLC, 795 F.3d 1057, 1059 (9th Cir. 2015).  But PAGA penalties are treated as representative claims, not class claims.  *Yocupicio*, 795 F.3d at 1062 (PAGA claims cannot be aggregated with class claims to meet CAFA jurisdictional requirement).  Consequently, Robinson's estimate of the PAGA penalties tied to the wage statements offer no help in establishing the CAFA amount in controversy.  This is so irrespective of Wood's own inaccurate characterization at times of the PAGA claims as class claims.  *See Canela v. Costco Wholesale Corp.*, 971 F.3d 845, 852–53 (9th Cir. 2020).

### E.    The Reimbursement Claim

Robinson estimates that the claim for failure to reimburse necessary business expenses puts $338K in controversy, based on the assumptions of $5.00 in unreimbursed business expenses per workweek and 67,648 workweeks in the relevant time period.  Dkt. No. 1 at 16.

Although plaintiff does not contest defendant's specific figures, they do not do the work Robinson asks of them.  That is because Robinson did not proffer any factual basis whatsoever to demonstrate that the $5.00 of unreimbursed business expenses per week is anything other than a random guess.  The amended complaint does not supply any useful information about the business expenses employees might have incurred that were not reimbursed, and Robinson did not proffer any evidence of its own to fill in this gap.  As a result, the Court is entirely in the dark about the reasonableness of assuming $5.00 per week in unreimbursed business expenses.  In effect, the $5.00 figure was "pulled from thin air," and the Court will not credit it as a plausible basis of the value of the reimbursement claim.  *Ibarra*, 775 F.3d at 1199.  Because there is no better, reasonable estimate of this claim before the Court, the amount in controversy attributable to the reimbursement claim is zeroed-out.  *See Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989, 996 (9th Cir. 2022).

### F.    Attorneys' Fees

Robinson's estimate of approximately $3.4M in attorneys' fees for plaintiff is not plausible.  Robinson has established that $3.34M for plaintiff's meal and rest period claims may be counted toward the $5M threshold, and that an additional $915K for the wage statement claim is also properly counted.  The problem it faces with respect to its fees estimate is that the meal and rest period claims are based on California Labor Code Section 226.7, which does not authorize recovery of attorneys' fees.  *See* Cal. Lab. Code § 226.7; *see also Kirby v. Immoos Fire Prot., Inc.,* 53 Cal. 4th 1244, 1248, (2012) (a party who prevails on a Section 226.7 action may not recover attorneys' fees under other sections).  Consequently, only the attorneys' fees attributable to the wage statement claim, which does allow for fees under Labor Code Section 226, should be counted toward the CAFA amount in controversy.  *See* Cal. Lab. Code § 226.

United States District Court
Northern District of California

Robinson posits an award of 25% of the common fund as a yardstick for estimating attorneys' fees. Dkt. No. 1 at 17. This figure is not unreasonable for jurisdictional purposes. *See Anderson v. Starbucks Corp.*, 556 F. Supp. 3d 1132, 1138-39 (N.D. Cal. 2020). A 25% award of fees on an estimated recovery of $915K for the wage statement claims yields $228,765 to be credited toward the amount in controversy.

### G. The Sum Total

Taking all the amounts Robinson has plausibly demonstrated with respect to CAFA, the amount in controversy totals approximately $4.48M, which is short of the $5M requirement. Consequently, removal was improvident under CAFA.

## IV. ROBINSON DID NOT ESTABLISH $75K IN CONTROVERSY FOR TRADITIONAL DIVERSITY

The same conclusion holds for removal on traditional diversity grounds under 28 U.S.C. § 1332. The parties agree on complete diversity of citizenship. The only dispute is whether Robinson has reasonably demonstrated that Wood's claims on an individual basis exceed the threshold of $75,000 in controversy. *See* 28 U.S.C. § 1332(a); *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 566 (2005).

Robinson posits the same assumptions and arguments here that it proffered for the CAFA determination of the various claims. The Court's discussion will also track the analysis done under CAFA. For the meal period claim, a 20% violation rate applied to 771 shifts worked by Wood at an average hourly rate of $25.37 yields $3,913 in controversy for Wood's meal period claim. For Wood's rest period claim, the amount in controversy is $4,034. The amount for Wood's wage statement claim is $2,550. The unreimbursed business expenses are again excluded as entirely arbitrary.

This leaves Robinson in heavy reliance on PAGA and attorneys' fees to cross the $75,000 threshold. Although PAGA civil penalties qualify for inclusion in the amount in controversy under Section 1332(a), *see Canela*, 971 F.3d at 850, defendant's calculations are overstated.

To start, Robinson pegs the PAGA penalties for the wage statement claim at $25,250. *See* Dkt. No. 14 at 17. This is based on 26 wage statements issued incorrectly, each subject to

enhanced penalties (one penalty at $250 and 25 penalties at $1,000 each) under Labor Code Section 226.3, which states:

> "Any employer who violates subdivision (a) of Section 226 shall be subject to a civil penalty in the amount of two hundred fifty dollars ($250) per employee per violation in an initial citation and one thousand dollars ($1,000) per employee for each violation in a subsequent citation, for which the employer fails to provide the employee a wage deduction statement . . . . The civil penalties provided for in this section are in addition to any other penalty provided by law."

Cal. Lab. Code § 226.3.

Wood suggests that wage statement civil penalties are barred by law and so should not be considered for amount in controversy purposes. Dkt. No. 16 at 10. But Wood expressly alleged that Robinson's failure to provide accurate wage statements under Section 226(a) was knowing and intentional. *See* Dkt. No. 1-11 at 16 ("Defendant's failure to comply with [S]ection 226(a) of the Labor Code was knowing and intentional."). Consequently, Wood's reference to Section 2699(i), which states that "[a]n aggrieved employee shall not collect a civil penalty for any violation. . . . of Section 226 *that is neither knowing or intentional* nor a failure to provide a wage statement," Cal. Lab. Code § 2699(i) (emphasis added), is rather beside the point.

A number of issues are raised by Robinson's estimate here. There is a split in the California state cases about the applicability of Section 226.3 to wage statements. *Compare Raines v. Coastal Pac. Food Distribs., Inc.*, 23 Cal. App. 5th 667, 675 (2018) (Section 226.3 penalties apply to inaccurate wage statements) *with Gunther v. Alaska Airlines, Inc.*, 72 Cal. App. 5th 334, 355-56 (2021) (Section 226.3 penalties do not apply to issued wage statements that were inaccurate). *Gunther*, which is the more recent California Courts of Appeal opinion, expressly considered and rejected the reasoning in *Raines* because Section 226.3 states the enhanced penalties only apply when an employer "fails to provide the employee a wage deduction statement." *Gunther,* 72 Cal. App. 5th at 355-56. *Gunther* follows the plain language of the statute, and so the Court applies it here.

The amended complaint does not allege that Robinson failed to provide a wage statement at all. Rather, it alleges that the wage statements issued were inaccurate. *See* Dkt. 1-11 at 15-16.

11

Consequently, the enhanced penalties in Section 226.3 do not apply, and the default is $100 per violation under Labor Code Section 2699(f)(2). This brings the PAGA estimate down from $25,250 to $2,600 (26 alleged violations at $100 each).

The case law is also somewhat unsettled about the portion of the PAGA claim that should be credited toward the jurisdictional amount. PAGA provides that a plaintiff's share of the penalty is 35%, and that 65% is awarded to the California Labor and Workforce Development Agency (LWDA). Cal. Lab. Code § 2699(m). Our circuit has stated that, "[t]o the extent Plaintiff can -- and does -- assert anything but his individual interest, however, we are unpersuaded that such a suit, the primary benefit of which will inure to the state, satisfies the requirements of federal diversity jurisdiction. The state, as the real party in interest, is not a 'citizen' for diversity purposes." *Urbino v. Orkin Servs. of California, Inc.*, 726 F.3d 1118, 1122-23 (9th Cir. 2013). Several district courts have taken this to mean that the LWDA's portion of the penalties cannot be counted toward the amount in controversy, while others have concluded it can be counted. *See Becerra-Zamora v. Gruma Corp.*, No. 24-CV-01076-WHO, 2024 WL 3338353, at *4 (N.D. Cal. July 8, 2024) (collecting cases). The Court finds no room under *Urbino* for counting the LWDA's portion toward the showing of the amount in controversy for an individual private plaintiff. Consequently, Robinson's PAGA estimate for the wage statement claim must be reduced from $2,600 to $910 (35% of $2,600).

Robinson's estimate of $18,300 in PAGA penalties for the meal period is also overly generous. *See* Dkt. No. 14 at 18. Robinson double counts the recovery under Labor Code Section 558 for the same cause of action, and it did not apply the 35% apportionment to account for Wood's statutory share. After correcting these mistakes, the estimate of the meal period penalties is $3,203.

A similar reduction is warranted for the rest period civil penalties, which Robinson also ballparks at $18,300. *See* Dkt. No. 14 at 18-19. This calculation suffers from the same defects as its meal period penalties calculation, and, for the same reasons, the proper calculation should be reduced to $3,203.

United States District Court
Northern District of California

Adding all of this up, Robinson may properly count toward the statutory threshold of $75,000 in controversy the amount of $10,497 in damages and $7,316 in PAGA penalties, for a total of $17,813. This leaves a shortfall of $57,188 for Robinson to cover.

Robinson did not establish that Wood's attorneys' fees will make up the difference. Robinson posits that attorneys' fees for prosecuting Wood's individual claims would amount to $173,811. Dkt. No. 14 at 20-21. This is based on a blended rate of $687 per attorney hour multiplied by estimated hours for specific tasks such as 50 hours to "attend trial," 50 hours for "work on pretrial," 50 hours for depositions, and the like. *Id*. at 20.

These estimates are subject to considerable doubt. Wood has filed a straightforward, plain vanilla wage and hour case under California state law. The law governing her claims is well settled, and Robinson has not demonstrated that there is anything novel here, factually or legally, that would stand out from similar cases. As demonstrated, a fair valuation of Wood's individual claims and civil penalties amounts to approximately $17,813. This is a very modest amount by any measure, and no responsible attorney would likely take such a small case through a costly trial and attendant pretrial proceedings, as Robinson assumes. A responsible attorney would not incur approximately $10 ($173,811) in legal fees for every $1 in likely recovery for the client ($17,813). Indeed, the Court would take a dim view of a fees request made on that basis. In the Court's long experience, it is much more likely that a case at this low level of valuation would almost certainly be settled promptly so that both sides could avoid incurring legal expenses grossly disproportionate to the value of the claims. Robinson makes no account for an early settlement or these other common-sense considerations, which renders its fees estimate unduly speculative. *See Fritsch v. Swift Transportation Company of Arizona, LLC*, 899 F.3d 785, 795 (9th Cir. 2018) ("[W]e are confident that district courts are well equipped to determine whether defendants have carried their burden of proving future attorneys' fees, and to determine when a fee estimate is too speculative because of the likelihood of a prompt settlement.").

There is the additional factor that Robinson's time estimates for specific tasks are wholly arbitrary. *See Coleman v. Hat World, Inc.*, No. 3:23-CV-03437-JD, 2024 WL 422079, at *1-2 (N.D. Cal. Feb. 5, 2024) (attorneys' fees estimate "must be something more than mere

13

conjecture."). To take one example, Robinson posits 50 hours to attend trial, but the Court's established practice, which is readily ascertained in public docket filings, would not contemplate anything close to that for a jury trial of Wood's individual claims. *See* Dkt. 14 at 20. A 50-hour trial is extremely rare and reserved only for the most complicated Multidistrict Litigation cases and similarly weighty matters. The same goes for Robinson's estimate of 50 hours for depositions and 50 hours for pretrial preparation, all of which would massively exceed the needs of this case. *Id.* Overall, Robinson assigns generous hours to its task list with nothing in the way of a reasoned or reasonable explanation of its numbers.

It bears mention that Wood's attorney filed a declaration estimating that the individual claims could be litigated for $26,000 in total. Dkt. No. 16-1 at 1. This is based on an actual hourly rate of $650, fees of $10,010 incurred as of the date of the filing of the reply brief in support of remand, and an estimate as Wood's lawyer that he can complete the case in an expeditious manner. *Id*. ¶¶ 3-4. Even if the $26,000 total were generously doubled to account for unforeseen events, Wood's attorneys' fees would amount to $52,000 through the end of the case. That is still below the $57,188 Robinson needed to cross the $75,000 threshold.

Consequently, the Court finds that attorneys' fees for plaintiff's claims would not exceed $57,187, and the total amount in controversy for the non-class claims would not exceed $75,000. Removal was improvident under 28 U.S.C. § 1441.

## CONCLUSION

The case is remanded to the Contra Costa Superior Court.

**IT IS SO ORDERED.**

Dated: February 20, 2026

_____
JAMES DONATO
United States District Judge

14